UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
PINNACLE LABORATORIES, INC.
    Debtor.                          No. 11-08-10239 SA

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON UNSECURED CREDITORS' COMMITTEE'S MOTION
<u>TO CONVERT CASE TO CHAPTER 7</u>**

This matter came before the Court for trial of the Unsecured Creditors' Committee's ("UCC") Motion to Convert Case to Chapter 7 (doc 69). The UCC appeared through its attorney George Moore. Debtor appeared through its attorney William Davis. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). The Court has considered the oral and written evidence presented at the trial and at the earlier trial on the motion to use cash collateral and has taken judicial notice of the file. The Court finds that the UCC's Motion to Convert is well taken and should be granted.

**<u>FINDINGS OF FACT</u>**

1.    Debtor filed this Chapter 11 proceeding on January 30, 2008 and remains a debtor in possession.

2.    Debtor filed its initial report on February 14, 2008 (doc 16). It includes, among other things, copies of calendar year 2005 and 2006 federal tax returns and a balance sheet as of January 29, 2008. The balance sheet shows cash on hand of $9,670 and accounts receivable of $231,268. The 2006 tax return shows $1.585 million in sales, cost of goods sold of $999,000 (63%) and gross profit of $586,000 (37%). Debtor had an operating loss of

$172,000 in 2006. The 2005 tax return shows $1.755 million in sales, cost of goods sold of $1,224,000 (69%) and gross profit of $530,000 (31%). Debtor had an operating loss of $128,000 in 2005.

3.    The United States Trustee appointed the UCC on April 7, 2008. Debtor is therefore not a "small business debtor" under § 101(51D).

4.    Debtor filed its first Monthly Operating Report ("MOR"), for the month of February, 2008, on March 31, 2008 (doc 52). It contains a balance sheet as of February 29, 2008 as well as two profit and loss statements for the month of February, one prepared on the cash basis (showing a loss of $5,144.48) and one prepared on the accrual basis (showing a loss of $72,182.21). The balance sheet shows a cash balance of $23,646 and accounts receivable of $192,368. Post-petition accounts payable were $35,154.63.

5.    The UCC filed its Motion to Convert to Chapter 7 on April 22, 2008 (doc 69), alleging mismanagement and a continuing loss to the estate without any likelihood of rehabilitation.

6.    On April 22, 2008, Debtor filed an Amended MOR for February (doc 71) which had substantially the same balance sheet and cash basis profit and loss statement, but which omitted the accrual basis profit and loss statement.

7.    On April 24, 2008, Debtor filed a Second Amended MOR for February (doc 76) which had a different balance sheet from the Amended MOR (particularly in the equity section of the balance sheet), and a revised accrual basis profit and loss statement (showing a loss of $70,038.27). This balance sheet shows a cash balance of $29,145.96 and accounts receivables of $191,364.29.

8.    On April 30, 2008, Debtor filed its March 2008 MOR (doc 86). The profit and loss statement (accrual basis) shows a March loss of an additional $20,544.73. The balance sheet shows cash of $28,215.72 and account receivables of $175,513.43. Post-petition accounts payable were $46,128.90.

9.    On May 23, 2008, Debtor filed its April 2008 MOR (doc 99). The profit and loss statement (accrual basis) shows an April loss of an additional $62,246.82. The balance sheet shows cash of $1,206.75 and account receivables of $185,728.90. Post-petition accounts payable were $93,607.50.

10.   Debtor's estate has had a substantial and continuing loss since the filing of the petition. By the end of April, 2008, Debtor was substantially out of cash, its receivables had declined by at least $45,000 from the filing date, and unpaid post-petition expenses had climbed to $93,607.50. See also UCC Trial Exhibit E (using same documents to arrive at $152,845.47 loss for Debtor while in bankruptcy.)

Page -3-

11.  In the three months since filing the bankruptcy, Debtor's average monthly receipts have been $97,115.  See Exhibit 19, form MOR-2.  In the same time, average actual disbursements have been $99,048.  Id.  And, monthly expenses for which disbursements have not been made average $31,203.  (Doc 99.)  So, actual accrual based expenses are approximately $130,000 per month.

12.  Debtor Trial Exhibits 14 and 15 are drafts of Debtor's proposed Disclosure Statement and Plan of Reorganization.

13.  On May 28, 2008, Debtor filed a Plan of Reorganization (doc 104)("Plan") and Disclosure Statement (doc 105) which appear to be completed versions of trial exhibits 14 and 15.

14.  Exhibit 17 is Debtor's 5 year cash flow projection.  It is based upon the following assumptions: 1) monthly revenues of $120,000 for the months of September through November, 2008, then $125,000 for the next 57 months; and 2) monthly expenses starting at around $55,000 and increasing gradually to $62,455 over the next 60 months.  These projections result in monthly income/cash flows of between $7,000 and $8,000.  The Plan, ¶ 5.1, calls for the reorganized Debtor to fund the Plan by paying $6,500 per month in cash for sixty months.  Debtor has not yet met its projections for either revenue or expense in the bankruptcy case.  The Court finds that the projections are simply speculations fabricated by the Debtor's management (albeit in good faith) to

present something to the Court that appears plausible, but in reality is not.

15.  In addition to the unbelievable numbers for expenses in the cash flow projections, even if the revenue figures were attainable (as they appear to have been in 2005 and 2006), Debtor was not profitable at those levels but suffered operating losses. Furthermore, the Disclosure Statement does not show any fundamental change in business plan or climate that would justify reducing expenses by half, even taking into account the expense reductions already effected by the Debtor.  This is particularly true in light of Debtor's historical cost of goods sold, which alone is about 60%.  In sum, the Court finds that Debtor is unable to fund a plan.

16.  Because the UCC has filed this Motion to Convert, the Court assumes that the unsecured creditors will not support Debtor's Plan.

17.  The UCC established that Debtor's manager has not reduced his salary during the Chapter 11 and continues to use Debtor funds to pay for the vehicle he uses.  The Court does not find these to be mismanagement, and there was no evidence of any gross mismanagement presented.

**CONCLUSIONS OF LAW**

Case 08-10239-s7   Doc 110   Filed 06/19/08   Entered 06/19/08 15:45:12 Page 5 of 8

1.    The UCC argues that this Chapter 11 case should be converted to Chapter 7 because "cause" exists under § 1112(b) of the Bankruptcy Code.  Section 1112(b)(1) provides:

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

2.    Section 1112(b)(4) provides a list of non-exclusive factors that constitute "cause" and includes the following factors which the UCC asserts are relevant here: substantial and continuing loss to the estate in conjunction with the absence of a reasonable likelihood for rehabilitation, <u>see</u> § 1112(b)(4)(A), and gross mismanagement of the estate, <u>see</u> § 1112(b)(4)(B).

3.    Based on the above findings, the Court finds that there is an absence of a reasonable likelihood of rehabilitation of the Debtor in Chapter 11.  Debtor cannot fund a plan, and is unable to repay its creditors out of current or future income.

4.        With regard to the other prong of § 1112(b)(4)(A), whether the Debtor has suffered continuing losses or diminution of the estate, the Court looks to both the financial prospects of the Debtor and the financial records filed with the Court.  The track record of the Debtor suggests a pattern of declining assets and substantial continuing losses.  Negative cash flow and an inability to pay current expenses as they come due can satisfy the continuing loss or diminution of the estate

Page  -6-

standard for purposes of § 1112(b).  In re AdBrite
Corp., 290 B.R. 209, 215 (Bankr. S.D. N.Y. 2003);
In re Motel Properties, Inc., 314 B.R. 889, 894
(Bankr. S.D. Ga. 2004); In re Route 202 Corp. t/a
Lionti's Villa, 37 B.R. 367, 374 (Bankr. E.D. Pa.
1984); and In re Galvin, 49 B.R. 665, 669 (Bankr.
D. N.D. 1985) (Post-petition negative cash flow is
considered by courts to be evidence of continuing
losses.).

In re Gateway Access Solutions, Inc., 374 B.R. 556, 564 (Bankr.

M.D. Pa. 2007).  Pinnacle Laboratories has a negative cash flow,

is depleting its current assets, and is demonstrating through its

growing accounts payable figure that it cannot meet current

demands.  The estate is suffering continuing losses.

5.    Cause exists under § 1112(b)(4)(A) to convert this case.

6.    No cause exists under § 1112(b)(4)(B) to convert the case.

7.    This case should be converted to Chapter 7 to enable a

Chapter 7 trustee to salvage what remains of the accounts

receivables and screen for potential recoverable transfers.  A

separate Order will enter converting the case.[1]

---

[1] This decision is being issued after the fifteen-day
deadline required by section 1112(b)(3) (added by the Bankruptcy
Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No.
109-08, 119 Stat. 23).  The delay occurred due to an
administrative mistake by the Court (not its staff).  The Court
does not read section 1112(b)(3) to impose a specific consequence
on either party for this failure.  Compare subsections 362(e)(1)
and (2) (stay is modified if certain hearings are not conducted
or decisions rendered within certain periods of time).  The Court
apologizes to the parties for missing this deadline.

Case 08-10239-s7    Doc 110    Filed 06/19/08    Entered 06/19/08 15:45:12 Page 7 of 8

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  June 19, 2008

copies to:

William F. Davis
6709 Academy NE, Suite A
Albuquerque, NM 87109

Leonard K Martinez-Metzgar
PO Box 608
Albuquerque, NM 87103-0608

George M Moore
Moore, Berkson & Gandarilla
PO Box 216
Albuquerque, NM 87103-0216